# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2023 ND 2

In the Matter of the Michael J. Tharaldson Irrevocable Trust II
dated October 3, 2011

| | |
|---|---|
| Bell Bank, Trustee, | Petitioner and Appellee |
| v. | |
| Matthew D. Tharaldson, | Respondent and Appellee |
| and | |
| Michelle Tharaldson LeMaster, | Respondent |
| and | |
| E.M., through his guardian,<br>Mark McAllister, | Interested Party and Appellant |

### No. 20220182

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Tristan J. Van de Streek, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice.

Berly D. Nelson (argued) and Timothy G. Richard (on brief), Fargo, N.D., for petitioner and appellee.

Beverley L. Adams (argued) and Fred J. Williams (on brief), Fargo, N.D., for respondent and appellee.

Jonathan T. Garaas, Fargo, N.D., for interested party and appellant.

# Matter of Michael J. Tharaldson Trust
## No. 20220182

**Tufte, Justice.**

[¶1]   E.M. appeals from an order concluding Matthew Tharaldson is the sole beneficiary of the Michael J. Tharaldson Irrevocable Trust Agreement II ("Trust II") and is entitled to the trust assets. E.M. argues he is a beneficiary under the Michael J. Tharaldson Irrevocable Trust Agreement ("Trust I"), Trust I was unlawfully merged with Trust II, the trustee engaged in illegal trust decanting, and he is entitled to attorney's fees. We affirm, concluding Matthew Tharaldson is the sole beneficiary under the plain language of either trust, and E.M. is not entitled to an award of attorney's fees.

I

[¶2]   Michael Tharaldson executed Trust I on February 14, 2007, and Trust II on October 3, 2011. Both trusts named State Bank & Trust, now known as Bell Bank, as trustee. On October 3, 2011, Bell Bank merged Trust I into Trust II.

[¶3]   In 2017, Michael Tharaldson died and a probate action was opened to administer his estate. Tharaldson was unmarried and had three children, including E.M. The district court found he died intestate. In 2019, Bell Bank filed this action petitioning for a determination of trust beneficiaries and approval of asset distribution. Bell Bank claimed the sole beneficiary was Michael Tharaldson's brother, Matthew Tharaldson. E.M. objected to the petition.

[¶4]   After E.M.'s demand for a change of judge was denied, the district court granted the petition and found Matthew Tharaldson was the sole beneficiary of the trust, entitling him to a distribution of all trust assets. In *Matter of Michael J. Tharaldson Irrevocable Trust II dated October 3, 2011*, 2021 ND 203, ¶ 22, 966 N.W.2d 564, we reversed the order denying E.M.'s demand for a change of judge, vacated the order granting the petition, and remanded for the assignment of a new judge and for proceedings anew on the merits of the petition.

[¶5]   On remand, a new judge was assigned and the district court held an evidentiary hearing on the petition. After the hearing, the court granted the petition and found Matthew Tharaldson was the sole beneficiary of the trust, entitling him to a distribution of all trust assets.

## II

[¶6]   E.M. argues that he and Michael Tharaldson's other two children were beneficiaries under Trust I and that Trust I is the operative document because the merger with Trust II was unlawful. Our primary objective in construing a trust instrument is to ascertain the settlor's intent. *Langer v. Pender*, 2009 ND 51, ¶ 13, 764 N.W.2d 159. "When a trust instrument is unambiguous, the settlor's intent is ascertained from the language of the trust document itself." *Id.* "Whether or not a trust is ambiguous is a question of law, fully reviewable on appeal." *Id.* As we explained in *Langer*, we apply general rules of construction of written documents to construe trust instruments:

> General rules of construction of written documents apply to the construction of trust instruments. *See Alerus* [*Fin., N.A. v. Western State Bank*], 2008 ND 104, ¶¶ 18-19, 750 N.W.2d 412. In North Dakota, the interpretation of a contract is governed by N.D.C.C. ch. 9-07. Under N.D.C.C. § 9-07-02, the contract language governs its interpretation "if the language is clear and explicit and does not involve an absurdity." Contracts are construed to give effect to the parties' mutual intention at the time of contracting "so far as the same is ascertainable and lawful." N.D.C.C. § 9-07-03. The rules provided in N.D.C.C. ch. 9-07 are applied "[f]or the purpose of ascertaining the intention of the parties to a contract, if otherwise doubtful . . . ." N.D.C.C. § 9-07-03. "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone if possible, subject, however, to the other provisions of [N.D.C.C. ch. 9-07]." N.D.C.C. § 9-07-04. "The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable. Each clause is to help interpret the others." N.D.C.C. § 9-07-06.

> "A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention

2

of the parties." N.D.C.C. § 9-07-08. "Particular clauses of a contract are subordinate to its general intent." N.D.C.C. § 9-07-15. "Repugnancy in a contract must be reconciled, if possible, by such an interpretation as will give some effect to the repugnant clause subordinate to the general intent and purposes of the whole contract." N.D.C.C. § 9-07-17. "Words in a contract which are inconsistent with its nature or with the main intention of the parties are to be rejected." N.D.C.C. § 9-07-18.

2009 ND 51, ¶¶ 14-15 (cleaned up).

[¶7]  Article 4(2) in Trust I provides:

> 2.  Upon My Death. Upon my death, the remaining balance of the Trust estate shall be handled as follows:
>
>     a.  To or for the benefit of my descendants and my wife as I may appoint in a valid testamentary instrument that expressly refers to this special power of appointment.
>
>     b.  To the extent that I do not exercise this special power of appointment, then the share of the Trust estate not so appointed shall be handled as follows:
>
>         (1)  If my brother, Matthew D. Tharaldson, is then living, then outright to him.
>
>         . . . .

Trust II has nearly identical language, except for Article 4(2)(a), which provides, "To or for the benefit of my descendants and my wife, *if I am then married,* as I may appoint in a valid testamentary instrument that expressly refers to this special power of appointment." (Emphasis added.) It is undisputed that no party presented a valid testamentary instrument to the district court.

[¶8]  E.M. concedes that he and Michael Tharaldson's other children are not beneficiaries under Trust II. He contends, however, that under Trust I, Article 4(2)(a), he and Michael Tharaldson's other two children, as Michael Tharaldson's descendants, are entitled to the remaining assets even though

3

Michael Tharaldson never exercised a special power of appointment in a testamentary instrument. E.M. argues that the special power of appointment is required only in relation to Michael Tharaldson's potential wife, not his descendants, and that the descendants take the remaining balance upon Michael Tharaldson's death. Bell Bank and Matthew Tharaldson argue the district court correctly concluded the special power of appointment in a testamentary instrument applies to both Michael Tharaldson's descendants and any potential wife.

[¶9] E.M. asserts the last antecedent rule applies and compels his construction. The last antecedent rule is a "rule in aid of the construction of statutes," requiring "that a limiting phrase or clause is to be restrained to the last antecedent unless the subject matter or context indicates a different legislative intent." *Kohler v. Stephens*, 24 N.W.2d 64, 72 (N.D. 1946). "The rule reflects the basic intuition that when a modifier appears at the end of a list, it is easier to apply that modifier only to the item directly before it. That is particularly true where it takes more than a little mental energy to process the individual entries in the list, making it a heavy lift to carry the modifier across them all." *Lockhart v. United States*, 577 U.S. 347, 351 (2016). However, the rule "is not an absolute and can assuredly be overcome by other indicia of meaning." *Id.* at 352. The United States Supreme Court has declined to apply the rule "where '[n]o reason appears why' a modifying clause is not 'applicable as much to the first and other words as to the last' and where 'special reasons exist for so construing the clause in question.'" *Id.* at 355 (quoting *Porto Rico Ry., Light & Power Co. v. Mor*, 253 U.S. 345, 348 (1920)).

[¶10] Bell Bank and Matthew Tharaldson contend that the language and context of the trust make it clear that the last antecedent rule should not be applied here and, furthermore, the series qualifier rule also requires their construction. The United States Supreme Court recently applied the series qualifier rule in interpreting a statute, stating, "Under conventional rules of grammar, '[w]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series,' a modifier at the end of the list 'normally applies to the entire series.'" *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1169

4

(2021) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 147 (2012)). Of course, neither the last antecedent nor the series qualifier is a "rule" in the strict sense of the word—both are "presumptions about what an intelligently produced text conveys." *Facebook*, 141 S. Ct. at 1173-74 (Alito, J., concurring) (quoting Scalia & Garner, at 51). Neither interpretive canon should be applied rigidly or divorced from context.

[¶11] We conclude that the special power of appointment in Article 4(2)(a) applies to both Michael Tharaldson's potential wife and his descendants. Article 4(2)(a) is clear when read in context with Article 4(2)(b), which provides, "To the extent that I do not exercise this special power of appointment, then the share of the Trust estate not so appointed shall [go to] . . . Matthew D. Tharaldson." This language provides that Matthew Tharaldson is the sole remainder beneficiary if Michael Tharaldson chose not to exercise the special power of appointment in a testamentary instrument.

[¶12] If E.M.'s interpretation were correct, the descendants would always take the remaining balance regardless of whether a testamentary instrument was made, and Matthew Tharaldson would never take the balance, rendering Article 4(2)(b) mere surplusage. Under such an interpretation, the descendants would share the remaining balance with any potential wife of Michael Tharaldson's if he exercised the special power of appointment in her favor. However, if no special power of appointment was exercised, such as here, the descendants under E.M.'s interpretation would simply take the remaining balance. Thus, E.M.'s interpretation assumes Michael Tharaldson never intended Article 4(2)(b) to come to fruition, but included it nonetheless. Accordingly, we conclude that Michael Tharaldson's intent is clear based on the unambiguous language of either trust: upon his death, his descendants and wife receive the remaining balance if so appointed; otherwise, if such appointment is not made, Matthew Tharaldson receives the remaining balance. Because Michael Tharaldson did not exercise his special power of appointment, Matthew Tharaldson is the sole beneficiary.

[¶13] Last, E.M. argues that Article 7(2)(d) supports his argument that the descendants are the beneficiaries under Trust I. Article 7(2)(d) provides,

"Provision for Issue. I have intentionally limited gifts under this Agreement to my issue as defined in this Agreement." E.M. asserts this provision means that only Michael Tharaldson's issue—his three children who are specifically identified by name in the trust—may benefit under the trust. We disagree. Article 7(2)(d) states that Michael Tharaldson has purposefully restricted his gifts to his issue, who are specifically identified in the trust, to those gifts which are specifically provided for in the trust. This provision does not mean that his issue are the only beneficiaries under the trust. E.M.'s interpretation would render all other provisions providing for distributions meaningless, including distributions to Michael Tharaldson during his lifetime under Article 4(1), and disposition of the remainder of the trust estate upon Michael Tharaldson's death under Article 4(2). Thus, we reject E.M.'s interpretation and conclude that under either Trust I or Trust II, Matthew Tharaldson is the sole beneficiary of the trust assets and he is entitled to a distribution of those assets.[1]

## III

[¶14] E.M. asserts he is entitled to attorney's fees under Article 7(4)(c) of the trust. That provision under both Trust I and Trust II provides, "I do not desire that the guardian of any minor beneficiary should incur personal expense in the support and maintenance of such beneficiary." Because we conclude that E.M. is not a beneficiary under the trust, this provision does not apply to him or his guardian. Accordingly, E.M. is not entitled to attorney's fees.

## IV

[¶15] We have considered the parties' remaining issues and arguments and conclude they are either without merit or unnecessary to our decision. We affirm the order concluding Matthew Tharaldson is the sole beneficiary of the

---

[1] Because E.M. has failed to show that the court erred in concluding Matthew Tharaldson is the sole beneficiary under Trust I or Trust II, we do not reach the issues concerning merger and decanting.

6

Michael J. Tharaldson Irrevocable Trust Agreement II and approving distribution of the trust assets.

[¶16] Jon J. Jensen, C.J.
Gerald W. VandeWalle
Daniel J. Crothers
Jerod E. Tufte
Allan L. Schmalenberger, S.J.


[¶17] The Honorable Allan L. Schmalenberger, Surrogate Judge, sitting in place of McEvers, J., disqualified.