VandeWalle, Chief Justice.
 

 [¶ 1] Jessica Ann Broom appealed from a judgment entered upon a conditional guilty plea to possession of drug paraphernalia and possession of a controlled substance with intent to deliver, reserving her right to appeal the denial of her motion to suppress evidence. We conclude the police officer's invasive search of Broom's person violated her rights under the Fourth Amendment and N.D. Const. art. I, § 8. We reverse and remand for further proceedings.
 

 I
 

 [¶ 2] On March 3, 2017, Bismarck Police Officers Jones and Girodat were patrolling near the intersection of 12th Street and Main Street in Bismarck. While waiting for a train to pass, the officers checked the license plate of the red 1998 Pontiac Grand Prix in front of them. The license plate check revealed the car was stolen, and once the train passed, the officers stopped the vehicle. Because the stop was a "felony, high-risk" stop, the officers approached the stolen vehicle with their handguns out. Officer Jones approached the driver's side. Officer Girodat approached the passenger side. The officers repeatedly instructed the occupants to get their hands up, and the driver complied immediately. The passenger, who the officers recognized from previous drug arrests as Jessica Broom, did not comply with the officers' orders. Broom moved side to side in the vehicle, made furtive movements in the passenger compartment, and did not put her hands up.
 

 [¶ 3] Officer Jones took the driver into custody while Officer Girodat detained Broom after removing her from the vehicle. Other officers arrived at the scene and a female officer, Officer Gallagher, approached as Broom was being handcuffed. Officers Jones and Girodat told Officer Gallagher that Broom was known to conceal items in her orifices, had not complied with commands, and she appeared to be moving around in the vehicle after the stop. As Officer Gallagher conducted a pat-down search of Broom's person, she felt a large, soft bulge in Broom's bra which
 
 *898
 
 Broom claimed was cash. Officer Gallagher retrieved the money from the bra to verify Broom's claim. In addition to a wad of money, Officer Gallagher discovered a baggie filled with several other baggies, a small glass vial, and a rolled-up ten dollar bill. Officer Gallagher put Broom in the back of her police car and placed her under arrest.
 

 [¶ 4] Broom was charged with possession of drug paraphernalia and possession of a controlled substance with intent to deliver, and subsequently moved to suppress all evidence obtained as a result of the search. On August 17, 2017, a hearing was held. The district court denied Broom's motion to suppress evidence, finding under the totality of the circumstances the officers had sufficient concern for their safety, and, therefore, the search was permissible under the Fourth Amendment. The district court explained:
 

 The uncertainty of what Broom was concealing, together with the facts that Broom was discovered in a stolen vehicle, that Broom had failed to comply with their lawful commands and continued to make furtive actions after being directly told to stop doing the same, her extreme anxiety and nervousness, in addition to the officer's knowledge of Broom's criminal history and ability to furtively conceal items on and in her body, they had reasonable grounds to search for possible weapons and to determine what was concealed in her bra.
 

 II
 

 [¶ 5] On appeal, Broom argues Officer Gallagher exceeded the scope of the
 
 Terry
 
 frisk by searching in her bra, and, therefore, all evidence obtained as a result of the search should be suppressed.
 

 [¶ 6] This Court reviews a district court's decision on a motion to suppress as follows:
 

 [W]e give deference to the district court's findings of fact and we resolve conflicts in testimony in favor of affirmance. We will not reverse a district court decision on a motion to suppress ... if there is sufficient competent evidence capable of supporting the court's findings, and if the decision is not contrary to the manifest weight of the evidence. Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law.
 

 State v. Kaul
 
 ,
 
 2017 ND 56
 
 , ¶ 5,
 
 891 N.W.2d 352
 
 (citations and quotations omitted).
 

 [¶ 7] "The Fourth Amendment to the United States Constitution, applicable to the states under the Fourteenth Amendment, and Article I, section 8, of the North Dakota Constitution, protects individuals from unreasonable searches and seizures."
 
 Kaul
 
 ,
 
 2017 ND 56
 
 , ¶ 4,
 
 891 N.W.2d 352
 
 . "Whether law enforcement violated constitutional prohibitions against unreasonable search and seizure is a question of law."
 
 Id.
 
 at ¶ 5.
 

 [¶ 8] "There is no automatic search rule for companions of an arrestee."
 
 State v. Heitzmann
 
 ,
 
 2001 ND 136
 
 , ¶ 11,
 
 632 N.W.2d 1
 
 . "Rather, a law enforcement officer may conduct a frisk, or a pat-down search, of a person only when the officer possesses an articulable suspicion that an individual is armed and dangerous."
 

 Id.
 

 (citation and quotations omitted). "A valid
 
 Terry
 
 frisk consists solely of a limited patting of the outer clothing of the suspect for concealed objects which might be used as instruments of assault."
 
 Id.
 
 at ¶ 13 (citation and quotations omitted). "[W]hen an outside clothing pat-down search reveals the presence of an object of a size and density that reasonably suggests the object
 
 *899
 
 might be a weapon, the searching officer is entitled to continue the search to the inner garments where the object is located in order to determine whether the object is in fact a weapon."
 
 Id.
 
 This Court has also recognized "a more intrusive
 
 Terry
 
 search may be constitutionally permissible when the detainee attempts to prevent an officer from performing an effective pat-down" or if an officer is faced with threatening conduct by the detainee.
 
 Id.
 
 at ¶ 16.
 

 [T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.
 

 Heitzmann
 
 ,
 
 2001 ND 136
 
 , ¶ 11,
 
 632 N.W.2d 1
 
 (citations omitted).
 

 III
 

 [¶ 9] The State argues this Court's decisions in
 
 Heitzmann
 
 and
 
 Tollefson
 
 support its position that the more invasive search of Broom's person was reasonable under the totality of the circumstances. In both cases, a
 
 Terry
 
 frisk following a traffic stop properly lead to a more invasive search of the defendant's inner garments. In
 
 Heitzmann
 
 , the officer had information the defendant's vehicle contained an unloaded pistol, the defendant's behavior was so evasive the officer had to hold him down to conduct the frisk, and the officer testified the inner garment search was done out of concern for officer safety to ensure the defendant didn't have anything else in his pockets.
 
 Heitzmann
 
 ,
 
 2001 ND 136
 
 , ¶¶ 14-15,
 
 632 N.W.2d 1
 
 . In
 
 Tollefson
 
 , this Court found the inner garment search of the defendant was proper because the object felt in the defendant's pocket, a hard cylindrical object three to four inches long, was of a size and density to reasonably suggest it was a weapon, and the officer testified she was concerned for her safety.
 
 State v. Tollefson
 
 ,
 
 2003 ND 73
 
 , ¶¶ 14-15,
 
 660 N.W.2d 575
 
 .
 

 [¶ 10] The circumstances of this case are distinguishable. At the outset of the stop, Broom did not comply with the officers' orders and appeared to be making furtive movements in the vehicle. Officer Girodat testified this behavior "raised a red flag" and "heightened" the officers' awareness. However, neither Officer Jones nor Officer Girodat testified they feared for their safety or that there was a concern that Broom was armed and dangerous. After exiting the vehicle, Broom attempted to retrieve her phone from the car, but did not actively resist the handcuffs. As Officer Girodat was in the process of placing Broom in handcuffs, Officer Gallagher approached to conduct a pat-down search of Broom's person.
 

 [¶ 11] Officer Gallagher testified she was informed by other officers that Broom had a history of concealing contraband in her orifices and that Broom did not comply with the officers' orders at the outset of the traffic stop. Officer Gallagher testified
 
 *900
 
 based on that information, there was a concern at the time of the stop that Broom may have been armed and attempting to hide the weapon inside the car.
 

 [¶ 12] Officer Gallagher testified she felt a large, soft bulge inside Broom's bra while conducting the pat-down. Officer Gallagher further testified it did not feel like anything hard, metallic, or similar to a weapon, gun, or knife. Officer Gallagher asked Broom what the bulge was, and Broom stated it was money. Officer Gallagher then retrieved the money to verify Broom's claim. Officer Gallagher did not testify she was concerned that Broom was armed and dangerous at the time of the search of her person, and did not testify that the bulge was of a size and density that would reasonably suggest it might be a weapon.
 

 [¶ 13] Under the totality of the circumstances, Officer Gallagher did not have reasonable and articulable suspicion that Broom was armed and dangerous after conducting the outside clothing pat-down, thus justifying a more intrusive search. The district court relied on the uncertainty of what Broom was concealing in her bra and her known criminal history to justify the inner garment search. This is not the standard.
 

 [¶ 14] The search of Broom, conducted while Broom was handcuffed, and away from the vehicle, revealed a "soft" or "squishy" bulge in her bra. Nothing in the record supports it was of the size and density that might be a weapon justifying a more intrusive search. To justify a more intrusive search for weapons, uncertainty as to what the object may be is insufficient. The purpose of the more invasive search is to ensure officer safety and to determine whether the object is in fact a weapon. An officer is only entitled to continue a pat-down search to the inner garments where an object is located when a pat-down reveals the presence of an object of a size and density that reasonably suggests the object might be a weapon. Additionally, there was no testimony that Broom resisted the pat-down or engaged in any threatening behavior justifying a more intrusive search.
 

 [¶ 15] Because Broom's rights were violated under the Fourth Amendment and the N.D. Const. art. I, § 8, we conclude the district court erred in denying her motion to suppress evidence.
 

 IV
 

 [¶ 16] We reverse the criminal judgment and remand for further proceedings.
 

 [¶ 17] Gerald W. VandeWalle, C.J.
 

 Jon J. Jensen
 

 Lisa Fair McEvers
 

 Daniel J. Crothers
 

 Jerod E. Tufte